COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia

BOARD OF SUPERVISORS OF CULPEPER
  COUNTY, VIRGINIA, AND ROBERT P. ORR, III
                                                          OPINION BY
v.        Record No. 2725-07-4                 JUDGE D. ARTHUR KELSEY
                                                          JULY 29, 2008
THE STATE BUILDING CODE TECHNICAL
  REVIEW BOARD, RANDOLPH W. GRIFFITH
  AND GRIFFITH GROUP, LTD.


                 FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                                John R. Cullen, Judge

                 Roy B. Thorpe, Jr. (John D. Maddox; Office of the Culpeper
                 County Attorney, on briefs), for appellants.

                 Eric A. Gregory, Assistant Attorney General (Robert F.
                 McDonnell, Attorney General; Steven P. Jack, Assistant
                 Attorney General; Thomas W. Nesbitt, Assistant Attorney
                 General, on briefs), for appellee The State Building Code
                 Technical Review board.

                 No brief or argument for appellees Randolph W. Griffith and
                 Griffith Group, Ltd.


        In this administrative appeal, the Culpeper County Board of Supervisors argues that the

circuit court erroneously affirmed a case decision by the State Building Code Technical Review

Board.  The Technical Review Board held that the Board of Supervisors had no authority to set

qualifications standards for third-party inspectors under the Virginia Uniform Statewide Building

Code (USBC).  Agreeing that the circuit court erred, we reverse its judgment and remand the

case for entry of a final order vacating the Technical Review Board's case decision.

                                            I.

        In 1991, the Culpeper County Board of Supervisors adopted a resolution requiring all

private inspectors retained by the county (referred to as third-party inspectors) to perform

inspections on behalf of the county's local building official to be qualified engineers or architects

licensed by the Commonwealth. William R. Myers became the County Building Official in 1998. Unaware of the county's resolution, Myers authorized third-party inspectors to perform work for the county without being qualified as licensed engineers or architects. In 2003, Randolph W. Griffith (a former county building official, but not a licensed engineer or architect) requested that Myers certify him as a third-party inspector. Griffith knew of the county's 1991 resolution but did not advise Myers of it.

After he had certified Griffith, Myers learned of the county's certification requirements. Myers asked the Board of Supervisors to again review its certification policy. In response, the Board of Supervisors reaffirmed its existing policy of requiring all third-party inspectors for the county to be licensed engineers or architects. Myers independently researched the issue and discovered that, of the six Virginia localities using third-party inspectors, each locality had a similar policy. Myers adopted the certification policy and decertified Griffith as a third-party inspector.

Griffith appealed his decertification to the local board of building code appeals, which affirmed Myers's decision to decertify Griffith. Griffith then appealed to the Technical Review Board. Griffith argued that the Board of Supervisors had no authority to set certification policies for third-party inspectors. Only Myers could make that decision, Griffith contended. While it might look like Myers made his own decision in this regard, Griffith added, in fact Myers merely followed the directive of the Board of Supervisors. In its final case decision, the Technical Review Board agreed with Griffith and set aside his decertification.

The Board of Supervisors and Myers appealed the Technical Review Board's case decision to the circuit court under the Virginia Administrative Process Act (VAPA), Code § 2.2-4000 *et seq.* The circuit court dismissed the petition for appeal and affirmed the Technical Review Board's decision.

II.

The Board of Supervisors and Robert P. Orr, III (Myers's successor as Building Official) appeal the circuit court's decision to us on the ground that the circuit court, like the Technical Review Board, erred as a matter of law in concluding the Board of Supervisors had no authority to establish the certification policy for third-party inspectors doing work for the county.[1]

We begin our analysis by examining the structure of the governing law. In 1972, the General Assembly directed the State Board of Housing, now the Board of Housing and Community Development (the Housing Board), to adopt a Uniform Statewide Building Code (USBC). Avalon Assisted Living Facilities v. Zager, 39 Va. App. 484, 496, 574 S.E.2d 298, 304 (2002) (citing Code §§ 36-98, 36-131 & 36-135); see 1972 Va. Acts, ch. 829. The legislature intended the Housing Board to give due regard to "generally accepted standards" recommended by nationally recognized organizations. Code § 36-99(B).

Under its enabling legislation, the Housing Board may modify, amend, or repeal any USBC provision after complying with the notice and hearing requirements of Code § 36-100. See Code § 36-102. These requirements include notice to every "building official" in the Commonwealth and, "where none, the local governing body of every city or county in the Commonwealth." Code § 36-100. "At any such hearing all persons desiring to do so shall be afforded an opportunity to present their views." Id.[2]

---

[1] Given our holding, we need not decide whether the Technical Review Board improperly entertained the appeal from the local board of building code appeals. Cf. Board of Sup. of Fairfax County v. Miller & Smith, Inc., 222 Va. 230, 234-35, 279 S.E.2d 158, 160-61 (1981), with Strawbridge & State Bldg. Code Tech. Rev. Bd. v. County of Chesterfield, 23 Va. App. 493, 498, 477 S.E.2d 789, 792 (1996).

[2] In 2006, the General Assembly amended Code § 36-100 (along with Code § 2.2-4006(A)(13)) to exempt the process from the Virginia Administrative Process Act, Code § 2.2-4000 et seq. See 2006 Va. Acts, ch. 719.

The General Assembly delegated responsibility for enforcement of the USBC to the "local building department," Code § 36-105(A), defined as "the agency or agencies of any local governing body charged with the administration, supervision or enforcement" of the USBC. Code § 36-97. Each local government must establish a local building department along with a "local board of Building Code Appeals" (the local appeals board) or enter into an agreement with some other locality or state agency to perform these roles. Code § 36-105(A). A party dissatisfied with a local department's application of the USBC may appeal to the local appeals board. Id. A further appeal may be taken from the local appeals board to the Technical Review Board. See Code §§ 36-105, 36-114.

In promulgating the USBC, the Housing Board "incorporated by reference the majority of the BOCA National Building Code," Avalon Assisted Living Facilities, 39 Va. App. at 497, 574 S.E.2d at 304 (citations omitted), and has since incorporated the technical provisions of the International Building Code.[3] One of the USBC's administrative provisions recognizes that the local building code official may outsource some of his duties to private third parties. "The building official is permitted to delegate duties and powers subject to any limitations imposed by the locality and shall be responsible for assuring that delegated duties and powers are carried out in accordance with the USBC." USBC § 109.3 (2000 ed.).[4] Section 104.2.2 also recognized the locality's authority to "establish additional qualification requirements" for county employees assisting the building official.

---

[3] In 2003, the Housing Board repealed the USBC and used the International Code Council's 2000 International Building Code (IBC) to form the USBC (2000 ed.). 13 Va. Admin. Code § 5-62-10 et seq. The USBC has since been repealed and recodified based on the ICC's 2006 IBC. See 13 Va. Admin. Code § 5-63-10 et seq. General section references contained in this opinion refer to the 2000 edition of the USBC made effective October 1, 2003.

[4] This provision is currently codified at USBC § 106.2 (2006 ed.). Under the current provision: "The building official may delegate powers and duties *except where such authority is limited by the local government.* . . ." 13 Va. Admin. Code § 5-63-60(B) (emphasis added).

In our case, the Technical Review Board considered these provisions but nonetheless held the Board of Supervisors had no authority under USBC § 109.3 to impose certification qualifications on third-party inspectors. Despite the clause in USBC § 109.3 subjecting the building official's delegation of duties to "any limitations imposed by the locality," the Technical Review Board held that language could not be taken at face value because it would conflict with USBC § 115.8.1. That regulation authorized the building official to "accept reports of inspections and tests from approved individuals or approved inspection agencies, which satisfy qualifications and reliability requirements." USBC § 115.8.1 (2000 ed.).

We find the Technical Review Board's reasoning, as well as the circuit court's endorsement of it, to be plainly wrong. USBC § 109.3 authorized the locality to impose "any limitation" it chose on the delegation by its building official of his duties to third-party inspectors. The Board of Supervisors chose to limit the delegation to certified engineers and architects. USBC § 115.8.1 merely authorized the county building official to accept inspection reports from "approved" inspectors satisfying the necessary "qualifications and reliability requirements." Nothing in § 115.8.1 contradicted § 109.3. To be sure, the two provisions complemented each other. Section 109.3 gave the locality the ultimate authority to establish criteria for who may act as a delegate of the building official's authority. Section 115.8.1, on the other hand, merely confirmed that the building official may accept inspection reports from approved inspectors and said nothing about delegating his authority to any third party.

The circuit court nonetheless deferred to the Technical Review Board's reasoning, correctly noting that courts give "great deference" to an agency's interpretation of its own regulations. See Holtzman Oil Corp. v. Commonwealth, 32 Va. App. 532, 539, 529 S.E.2d 333, 337 (2000). This deference stems from Code § 2.2-4027, which requires that reviewing courts "take due account" of the "experience and specialized competence of the agency" promulgating

the regulation.  <u>Va. Real Estate Bd. v. Clay</u>, 9 Va. App. 152, 160-61, 384 S.E.2d 622, 627 (1989) (interpreting former Code § 9-6.14:17).  Even so, "deference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ."  <u>EEOC v. Arabian American Oil Co.</u>, 499 U.S. 244, 260 (1991) (Scalia, J., concurring).

No matter how one calibrates judicial deference, the administrative power to interpret a regulation does not include the power to rewrite it.  When a regulation is "not ambiguous," judicial deference "to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."  <u>Christensen v. Harris County</u>, 529 U.S. 576, 588 (2000).  Though agencies may be tempted to adjudicate their way around unwanted regulations, such overreaching undermines the notice and public hearing procedures of the rulemaking process — thereby putting in jeopardy the "enhanced political accountability of agency policy decisions adopted through the rulemaking process" and the democratic virtue of allowing "all potentially affected members of the public an opportunity to participate in the process of determining the rules that affect them."  1 Richard J. Pierce, Jr., <u>Administrative Law Treatise</u> § 6.8, at 369, 372 (4th ed. 2002); <u>see</u> <u>generally</u> 1 Charles H. Koch, Jr., <u>Administrative Law & Practice</u> § 2.12, at 53 (2d ed. 1997).

Here, the Technical Review Board interpreted USBC § 115.8.1 to wholly preclude the Board of Supervisors from imposing what § 109.3 plainly permitted — the imposition of "any limitation" the Board of Supervisors chose to impose upon the delegation by its building official of his duties to private third-party inspectors.  Nothing in the text or the logical context of either regulation supports this interpretation.[5]  In effect, the Technical Review Board excised the

---

[5] During the hearing before the circuit court, the court added an additional rationale for the Technical Review Board's decision:  "There is nothing in [section 109.3] that tracks the language in section 104, that says the locality may establish additional qualification requirements

phrase "any limitations imposed by the locality" from USBC § 109.3 without complying with the notice and hearing procedures designed to protect the public's interest in participating in the lawmaking task of administrative agencies.

III.

In sum, the circuit court erred in deferring to the Technical Review Board's unreasonable interpretation of USBC § 109.3. We reverse the circuit court's dismissal of the VAPA petition for appeal and remand with instructions to vacate the Technical Review Board's case decision holding that the Board of Supervisors had no authority to establish qualifications for third-party inspectors under the USBC.

Reversed and remanded.

---

for delegated duties." We acknowledge, but are unpersuaded by, this observation. Section 109.3's reference to "any limitations" is broad enough to need no further amplification.