COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and McClanahan
Argued by teleconference


JUDY CAROL HORNE
                                                          OPINION BY
v.       Record No. 1319-10-3            JUDGE ELIZABETH A. McCLANAHAN
                                                          FEBRUARY 22, 2011
COMMONWEALTH OF VIRGINIA,
   REAL ESTATE BOARD


              FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                            Teresa M. Chafin, Judge

          Thomas P. Walk (Altizer, Walk and White, PLLC, on brief), for
          appellant.

          Steven P. Jack, Assistant Attorney General (Kenneth T. Cuccinelli,
          II, Attorney General, on brief), for appellee.


        In this administrative appeal, Judy Carol Horne challenges an order of the circuit court:

(i) affirming the decision of the Commonwealth of Virginia's Real Estate Board ("Board") to

impose sanctions against Horne, as a "licensed real estate salesperson," upon the Board's

findings that she violated 18 VAC 135-20-310(2) (Count 2) and 18 VAC 135-20-260(10) (Count

3) by her conduct related to a certain real estate transaction; and (ii) denying Horne's request for

attorney's fees, pursuant to Code § 2.2-4030, incurred in defending the two alleged violations

that were ultimately rejected by the Board (Counts 1 and 4), and the two remaining alleged

violations that are the subject of this appeal (Counts 2 and 3).

        Concluding that the Board's findings on Counts 2 and 3 were based on arbitrary and

capricious interpretations of its regulations, and supported by insufficient evidence, we reverse

the judgment of the circuit court in affirming the Board's decision. We also conclude that Horne

is entitled to attorney's fees in defending Counts 2 and 3, which the circuit court denied when it

erroneously affirmed the Board's decision.  We further conclude, however, that Horne is not entitled to attorney's fees as to Counts 1 and 4, as those counts were not the subject of an appeal to the circuit court; we thus affirm the circuit court as to that ruling.  Accordingly, we remand this case to the circuit court for a determination of reasonable attorney's fees to be awarded to Horne on Counts 2 and 3.

## I.  BACKGROUND

Kris and Jessica Shreve, the prospective buyers ("buyers"), and Jerry Hawkins, the prospective seller ("seller"), entered into negotiations over the sale of certain residential property located in Pounding Mill, Virginia.  Horne, as a real estate agent with Coldwell Banker Security Real Estate, Inc. ("Coldwell Banker"), represented the buyers, and Vicki England, as a real estate agent with Century 21 Prime Properties, represented the seller.  After a number of offers and counter-offers were made between the buyers and the seller through their respective agents, Horne and England, the parties "ratified" a sales contract for the property on July 12, 2007.

The contract provided, *inter alia*, the following:  (i) "upon ratification" of the contract the buyers were to pay to Coldwell Banker an earnest money deposit in the sum of $100; (ii) the buyers were to provide the seller with a "pre-approval letter from [the] lending institution of [buyers'] choice, within 10 business days from date of acceptance of contract," or the contract would be in "default at the option of the [seller]" and the earnest money deposit would be "forfeited to the [seller]"; (iii) the contract was contingent upon the buyers obtaining financing from their lending institution for the purchase of the property; and (iv) in the event the loan to the buyers was not approved the contract could be "cancelled by the buyer(s)," and the buyers would thereby be entitled to return of the earnest money deposit.

On July 16, 2007, Horne sent to England a facsimile stating that the buyer, Kris Shreve, "is working with Tim at New Peoples Bank who is on vacation until the 23rd of this month; he

will not have the [pre-approval] letter until Tim returns." Horne also called England on July 16th and 18th and advised that Shreve had not yet delivered the earnest money deposit.

After failing to keep appointments with Horne on July 16th and July 18th for delivery of the earnest money deposit, Shreve called Horne on July 19th (the fifth business day following ratification of the contract) and explained that the bank had denied his loan request and that he therefore wished to cancel the sales contract. On the same day, Horne sent to England a facsimile stating:

> [Shreve] . . . did not provide me with an earnest money deposit last night as agreed. He did call me this afternoon to tell me that he had spoken with another loan officer at New Peoples Bank who told him he would have to come up with 20% of the total loan to bring to closing. He has informed me that he will not be able to provide 20% of the funding, and as of today he no longer wishes to proceed with the offer to purchase.

On July 26th, England requested that Horne provide to her, among other things, a letter from the buyers' bank stating that it had denied financing to the buyers and a "signed release of contract noting that escrow monies were not received." Horne provided those documents to England on the following day.

The seller subsequently filed a complaint against Horne with the Virginia Department of Professional and Occupational Regulation ("Department")[1] in regard to her conduct in representing the buyers. Following the Department's investigation, the Department prepared a report of findings dated September 22, 2008, outlining four counts of Horne's alleged violations of the Board's regulations. The Department then held an "informal fact-finding conference" on July 29, 2009. Board member Sharon Johnson conducted the hearing in which she received

---

[1] The Board is a separate agency within the Department, and the Department conducts investigations in matters involving the various agencies under its authority.

documentary evidence from both the Department and Horne, and heard Horne's testimony. On August 19, 2009, Johnson issued her written recommendations to the Board.

For Counts 1 and 4, Johnson recommended that "the file be closed" based on her findings that Horne had not violated 18 VAC 135-20-300(6) or 18 VAC 135-20-180(B)(1)(a), as charged in those counts, respectively.

As to Count 2, Johnson concluded Horne had violated 18 VAC 135-20-310(2), as charged, based on her finding that Horne failed to provide written notice to England in a timely manner that the buyers had not paid the earnest money deposit as required by the sales contract. For this alleged violation, Johnson recommended that a penalty of $500 be imposed and that Horne's license be placed on probation until she completed four hours of specified continuing education.

As to Count 3, Johnson concluded Horne had violated 18 VAC 135-20-260(10), as charged, based on her finding that Horne did not produce a pre-approval letter from the buyers' bank within ten days as required by the contract. For this alleged violation, Johnson recommended that a penalty of $1,000 be imposed and that Horne's license be placed on probation until she completed three hours of specified continuing education.

At a Board meeting on September 10, 2009, the Board voted to accept Johnson's recommendations and a final order of the Board to that effect was entered on the same day. Horne appealed the Board's order to the circuit court, challenging its decision as to both Counts 2 and 3, and seeking an award of attorney's fees for her defense to all four counts.

By final order dated May 21, 2010, the circuit court affirmed the Board's September 10, 2009 order "in all respects" and dismissed Horne's appeal. The court specifically found that there was "substantial evidence" to support the Board's decision and that the Board's construction of its regulations was "neither arbitrary nor capricious." Upon rejecting Horne's

challenge to the Board's disposition of Counts 2 and 3, the court made no award of attorney's fees to Horne under Code § 2.2-4030 for her defense to the alleged violations. The court also rejected Horne's request for attorney's fees on Counts 1 and 4, explaining that, even though Horne succeeded before the Board in her defense against those alleged violations, those two counts "were not at issue before the [c]ourt in this appeal."

## II. ANALYSIS

The Virginia Administrative Process Act authorizes judicial review of agency decisions. See Code § 2.2-4027. Under settled principles, the burden is upon the party appealing such a decision to demonstrate error. Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197, 692 S.E.2d 277, 280 (2010); Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). "Our review is limited to determining (1) '[w]hether the agency acted in accordance with law;' (2) '[w]hether the agency made a procedural error which was not harmless error;' and (3) '[w]hether the agency had sufficient evidential support for its findings of fact.'" Avante at Roanoke, 56 Va. App. at 197, 692 S.E.2d at 280 (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)).

On factual issues, the determination to be made by the reviewing court is "'whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" John Doe v. Virginia Bd. of Dentistry, 52 Va. App. 166, 175, 662 S.E.2d 99, 103 (2008) (quoting Johnston-Willis, 6 Va. App. at 242, 369 S.E.2d at 7). See Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) ("The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938))).

- 5 -

Further, when reviewing claims of regulatory interpretive error in an administrative

appeal, we are to

> "give 'great deference' to an agency's interpretation of its own
> regulations." Board of Supervisors v. State Bldg. Code Tech.
> Review Bd., 52 Va. App. 460, 466, 663 S.E.2d 571, 574 (2008).
> "This deference stems from Code § 2.2-4027, which requires that
> reviewing courts 'take due account' of the 'experience and
> specialized competence of the agency' promulgating the
> regulation." Id. (quoting Real Estate Bd. v. Clay, 9 Va. App. 152,
> 160-61, 384 S.E.2d 622, 627 (1989)). However, "'deference is not
> abdication, and it requires us to accept only those principles of
> agency interpretations that are reasonable in light of the principles
> of construction courts normally employ.'" Id. (quoting EEOC v.
> Arabian American Oil Co., 499 U.S. 244, 260, 111 S. Ct. 1227,
> 113 L. Ed. 2d 274 (1991)).

Avante at Roanoke, 56 Va. App. at 197, 692 S.E.2d at 280; see also Appalachian Voices v. State

Air Pollution Control Bd., 56 Va. App. 282, 293 n.2, 693 S.E.2d 295, 300 n.2 (2010) ("[A]n

agency's interpretation [of its own regulations] must be given controlling weight unless it is

plainly erroneous or inconsistent with the regulation." (citations and internal quotation marks

omitted)); Avalon Assisted Living Facilities v. Zager, 39 Va. App. 484, 503, 574 S.E.2d 298,

307 (2002) (principles of statutory construction apply with equal force "to the interpretation of

regulations adopted by an administrative agency").

Accordingly, we give no deference to an agency's interpretation of its regulation that is

"arbitrary and capricious," meaning an interpretation that is "'unreasonable'" or "'without

determining principle.'" Williams v. Commonwealth of Virginia Real Estate Bd., 57 Va. App.

108, 135, 698 S.E.2d 917, 930 (2010) (quoting School Bd. of the City of Norfolk v. Wescott, 254

Va. 218, 224, 492 S.E.2d 146, 150 (1997)); see Clay, 9 Va. App. at 161, 384 S.E.2d at 627

(explaining that courts may reverse an administrative agency's construction of its own regulation

if that construction is "arbitrary or capricious" (citing Johnston-Willis, 6 Va. App. at 244, 369

S.E.2d at 8)).

A. Count 2

Under Count 2, the Board found that Horne violated 18 VAC 135-20-310(2), which provides: "Actions constituting improper delivery of instruments include: . . . Failing to provide in a timely manner to all principals to the transaction written notice of any material changes to the transaction." The Board based this finding on Horne's alleged failure to provide timely written notice to the seller's agent, England, that the buyers had failed to deliver the earnest money deposit of $100 to Coldwell Banker "upon ratification" of the sales contract, as was required of the buyers under the contract.

Challenging this determination, Horne argues that 18 VAC 135-20-310(2) is inapplicable because the failure of the buyers to deliver the earnest money deposit was not a "material change[] to the transaction" between the buyers and the seller in light of the insignificant amount of the deposit in comparison to the purchase price of $145,000 for the subject property. 18 VAC 135-20-310(2). That is, the deposit represented less that 7/100ths of one percent of the purchase price. In the alternative, Horne argues that she nevertheless gave England timely written notice of the buyers' non-payment of the earnest money deposit, as required under the regulation, by way of her July 19, 2007 facsimile to England, which specifically stated that "[Shreve] . . . did not provide me with an earnest money deposit last night as agreed."[2]

Assuming without deciding that the buyers' non-payment of the earnest money deposit after ratification of the sales contract was a "material change"[3] to the transaction within the meaning of 18 VAC 135-20-310(2), we agree with Horne that her July 19, 2007 facsimile to England constituted timely written notice of that development under this regulation.

---

[2] Horne sent this facsimile to England on July 19th after advising England orally on both July 16th and 18th that the deposit had not been delivered.

[3] See Williams, 57 Va. App. at 132-35, 698 S.E.2d at 928-30 (addressing the term "material change" under 18 VAC 135-20-310(2)).

As a threshold matter, the Board concedes that Horne's July 19, 2007 facsimile to England constituted a written notice.[4] We thus turn to the question of whether the notice was "timely." 18 VAC 135-20-310(2). Because 18 VAC 135-20-310(2) does not define the term "timely," the Board points to another one of its regulations, 18 VAC 135-20-180(B)(1)(a), for guidance in defining the term. The latter regulation provides, in relevant part:

> Upon the ratification of a contract, earnest money deposits and down payments received by the principal broker or supervising broker or his associates must be placed in an escrow account by the end of the fifth business banking day following ratification, unless otherwise agreed to in writing by the parties to the transaction . . . .

18 VAC 135-20-180(B)(1)(a). Based on this regulation, the Board reasonably concludes, in interpreting its own regulations, that a real estate agent's written notification of non-payment of an earnest money deposit due "upon ratification" of the sales contract would be timely under 18 VAC 135-20-310(2) if given within five business days of the date of ratification, i.e., the same time frame given for placing the deposit in escrow under 18 VAC 135-20-180(B)(1)(a).

That is precisely what occurred in this case when Horne gave written notification to England on July 19, 2007—the fifth business day after ratification of the sales contract between the buyers and the seller—and specifically stated that she had not received the buyers' earnest money deposit. Recognizing this fact, the Board, in an attempt to defend its position, challenges the substance of Horne's notification by asserting in its brief:

> Although on the fifth business day after ratification, Horne sent a fax to the listing agent stating that "The purchaser . . . did not provide me with an earnest money deposit last night as agreed," *Horne does not in that fax specify what the new status of the [earnest money deposit] will be at the end of that day nor suggest any amended language to insert into the contract*.

---

[4] See Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*) ("'A party can concede the facts but cannot concede the law.'" (quoting Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990))).

(Emphasis added.) The obvious fallacy in this assertion is that 18 VAC 135-20-310(2) requires only that the real estate agent give timely written notice of a material *change* to the transaction— not some notice of the agent's speculation of what the status of that change might be at some future point in time, nor notice of the agent's suggestion as to how the parties should respond to that material change through some amendment to the contract.

We thus conclude the Board's finding that Horne violated 18 VAC 135-20-310(2) under Count 2 was based on an arbitrary and capricious construction of the regulation, and insufficient evidence to support the finding. Accordingly, we reverse the judgment of the circuit court in affirming the Board's decision on Count 2.

### B. Count 3

Under Count 3, the Board found that Horne violated 18 VAC 135-20-260(10), which provides: "Actions constituting unworthy and incompetent conduct include: . . . Failing to act as a real estate broker or salesperson in such a manner as to safeguard the interests of the public." Here, the contract required that the buyers provide to the seller a pre-approval letter from the buyers' bank within ten business days from the date the sales contract was ratified. Otherwise, the contract was subject to default at the option of the seller, and, upon such default, the buyers' earnest money deposit would be forfeited. According to the Board, because Horne had not yet sent a pre-approval letter to England by July 26, 2007, which was the tenth business day following ratification of the contract, the seller's optional default provision was "trigger[ed]," and thus, the Board concluded, Horne failed to "take reasonable steps necessary to safeguard her clients' interest," in violation of 18 VAC 135-20-260(10).

Horne argues the Board's finding that she violated 18 VAC 135-20-260(10) by her failure to provide to England a pre-approval letter from the buyers' bank within ten business days of ratification of the contract is without merit. Given the reasons Horne did not provide the

letter to England, Horne argues there was no basis for the Board's conclusion that she was remiss in "safeguarding" the buyers' interest relative to the consequences of non-production of the letter, such as would constitute a violation of the regulation. We agree.

On the fifth business day following ratification of the sales contract—i.e., six days before the pre-approval letter was due—the buyers communicated to Horne, and Horne communicated to England by her July 19, 2007 facsimile to England, (i) that the buyers were unable to obtain financing from their bank for the purchase, and (ii) that the buyers were therefore exercising their right to cancel the contract. Furthermore, Horne had already advised England by a facsimile sent on July 16, 2007 that the buyers would not have a pre-approval letter until their banker, "Tim at New Peoples Bank," returned from vacation on the 23rd of that month. Horne thus had no pre-approval letter to provide to England before the buyers' cancellation on July 19, 2007; that cancellation necessarily terminated what would have been the buyers' obligation to produce the letter on July 26th, or risk having the contract declared in default by the seller.

In any event, there was no indication that Horne failed to "take reasonable steps to safeguard" the buyers against such default in connection with production of the pre-approval letter from the buyers' bank. Indeed, the evidence indicated that Horne had no control over the production of the letter, and she obviously could not produce what did not exist. In this context, the obligation of the realtor to "safeguard" her client's interests, pursuant to 18 VAC 135-20-260(10), cannot mean she is strictly liable for some contractual risk to her clients that was beyond her control and that did not, in fact, materialize. That would be the result, however, under the Board's application of the regulation to the facts of this case if its decision were to stand.

Thus, like with Count 2, we conclude the Board's finding that Horne violated 18 VAC 135-20-260(10) under Count 3 was based on an arbitrary and capricious interpretation of the

regulation and insufficient evidence to support the finding. Accordingly, we reverse the judgment of the circuit court in affirming the Board's decision on Count 3.

C. <u>Attorney's Fees under Code § 2.2-4030</u>

Horne seeks an award of attorney's fees under Code § 2.2-4030(A) on all four counts initiated against her by the Department. We conclude that she is not entitled to attorney's fees under the statute on Counts 1 and 4, but that she is entitled to an award of reasonable attorney's fees on Counts 2 and 3.

Code § 2.2-4030(A) provides, in relevant part, as follows:

> In any civil case brought under Article 5 (§ 2.2-4025 et seq.) of this chapter . . . in which any person contests any agency action, such person shall be entitled to recover from that agency . . . reasonable costs and attorneys' fees if such person substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust. The award of attorneys' fees shall not exceed $25,000.

Code §§ 2.2-4025 through -4029, in turn, address the statutory framework for judicial review of agency actions instituted in "courts of original jurisdiction," and the appeal of the judgments of those courts to "higher courts as in other cases." Code § 2.2-4026.

In instituting this "civil case" in circuit court, Horne did not "contest" the Board's findings on Counts 1 and 4 because the Board had already dismissed the alleged violations under those two counts. Code § 2.2-4030(A). Thus, as Horne does not meet the threshold requirement of Code § 2.2-4030(A) on Counts 1 and 4, we are without authority to consider awarding her attorney's fees under the statute for her defense to those counts before the Board. Accordingly, we affirm the circuit court in denying Horne's request for attorney's fees on those two counts.

As to Counts 2 and 3, which Horne has contested in this case, the issues under Code § 2.2-4030(A) for determining Horne's entitlement to an award of attorney's fees on these counts are: (1) whether she has "substantially prevail[ed] on the merits of [this] case," (2) whether the

"agency's position is not substantially justified," and (3) whether "special circumstances would make an award unjust." See Hollowell v. Virginia Marine Res. Comm'n, 56 Va. App. 70, 82-91, 691 S.E.2d 500, 506-11 (2010) (applying "the statute's three-part test").

First, in light of our rulings above on Counts 2 and 3 in favor of Horne, she has clearly "substantially prevail[ed] on the merits" in this case. See id. at 86, 691 S.E.2d at 508 (a party has "'substantially prevailed on the merits' of his action" under Code § 2.2-4030(A) if he has "obtain[ed] a judgment in his favor on a significant issue in dispute").

Second, because of the Board's arbitrary and capricious construction of its regulations in making its findings under Counts 2 and 3, coupled with the absence of evidence to support those findings, we conclude that the Board's position as to each of those counts was "unreasonable, and thus not substantially justified, as a matter of law," under the second prong of the Code § 2.2-4030(A) three-part test. Id. at 88, 691 S.E.2d at 509.

Finally, under the third prong of the statute's three-part test, the Board has presented no purported "special circumstances" for consideration that would make an award of attorney's fees to Horne "unjust." Code § 2.2-4030(A). Nor did the circuit court find any such circumstances.

We therefore remand this case to the circuit court for a determination of reasonable attorney's fees to be awarded to Horne on Counts 2 and 3. As explained in Hollowell, "Code § 2.2-4030(A) mandates that attorney's fees 'shall' be awarded where the requirements of the three-part test are met. The actual amount of an award of fees under Code § 2.2-4030(A) remains, of course, within the 'broad discretion afforded to the trial court . . . based upon what is reasonable and just.'" Hollowell, 56 Va. App. at 83, 691 S.E.2d at 507 (quoting Department of Med. Assistance Servs. v. Beverly Healthcare of Fredericksburg, 268 Va. 278, 286 n.3, 601 S.E.2d 604, 608 n.3 (2004)).

## III.  CONCLUSION

For the reasons stated above, we (i) affirm the circuit court in denying Horne's request for attorney's fees under Code § 2.2-4030(A) on Counts 1 and 4; (ii) reverse the judgment of the circuit court in affirming the Board's decision against Horne on Counts 2 and 3; (iii) reverse the circuit court in denying Horne's request for attorney's fees under Code § 2.2-4030(A) on Counts 2 and 3; and (iv) remand this case to the circuit court for a determination of reasonable attorney's fees to be awarded to Horne on Counts 2 and 3.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>