# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Chesapeake Hospital Authority,
d/b/a Chesapeake Regional
Medical Center

v.

Department of Medical
Assistance Services

September 27, 2012

Case No. (Civil) CL12-426

BY JUDGE V. THOMAS FOREHAND, JR.

This matter is before the Court on Chesapeake Hospital Authority's ("the Hospital") Petition for Appeal from a Final Agency Decision dated December 19, 2011, from the Department of Medical Assistance Services ("DMAS" or "the Department").

This appeal presents a single issue raised by the Hospital, which administered inpatient services to three Virginia Medicaid recipients: P.M.G., S.T., and J.M.C. The Hospital asserts that the Department improperly denied payment for the inpatient services it provided these recipients. The Department conducted a utilization review audit of twelve medical records requested from the Hospital. By letter dated October 29, 2010, the Department notified the Hospital that it had identified an overpayment in the amount of $364,491.91. On November 29, 2010, the Hospital filed an appeal request, and an Informal Fact-Finding Conference was held on February 8, 2011, as provided in the Virginia Code. An informal appeal decision was issued on May 23, 2011, which upheld the overpayment

amount of $364,491.91. By letter dated June 22, 2011, the Hospital appealed the informal decision and a formal hearing was held before the appointed hearing officer, Frederick R. Gerson, Esquire. The Recommended Decision of Hearing Officer was issued on October 20, 2011, and both parties had the opportunity to file written exceptions on or before November 22, 2011. On December 19, 2011, the Director of DMAS issued the Final Agency Decision, to which this appeal was taken. The Final Agency Decision accepted in part and rejected in part the Hearing Officer's Recommended Decision and provided that the overpayment amount of $364,491.91 was to be recalculated by the Department based upon its rulings.

The Petition for Appeal was filed in this Court on February 16, 2012. DMAS filed the administrative record in the matter on February 21, 2012, which, in a fate potentially worse than that of Gregor Samsa himself,[1] the Court has carefully reviewed in its entirety. Both parties have, by counsel, presented arguments in their respective briefs and at the hearing on August 29, 2012.

## I. *Findings of Fact Accepted in the Final Agency Decision*

### A. *Patient P.M.G.*

Patient P.M.G. was admitted to inpatient hospital services on December 25, 2009. At the time of admission, P.M.G. was not Medicaid eligible, but became retroactively eligible on March 22, 2010. The Hospital documented physician certification of the need for inpatient services within 24 hours of P.M.G.'s admission to the Hospital, on December 26, 2009. The Hospital's medical records concerning P.M.G. were updated and/or amended to include recertification of the need for inpatient services on July 12, 2011. The date of P.M.G.'s hospital discharge was March 27, 2010, the same date as the patient's death; therefore, P.M.G. was admitted to the hospital for inpatient care services for a total of 92 days. DMAS reimbursed the Hospital $238,244.10 for the provided inpatient hospital services. Timely physician certification of P.M.G.'s need for admission and inpatient services existed for 59 days of P.M.G.'s admission to inpatient hospital care, and no timely physician certification or recertification existed for 33 days of P.M.G.'s admission.

### B. *Patient S.T.*

Patient S.T. was admitted to inpatient hospital services on April 27, 2009. At the time of hospital admission, S.T. was not Medicaid eligible, but became retroactively eligible on July 28, 2009. The Hospital documented

---

[1] *See generally,* Franz Kafka, "The Metamorphosis," in *The Metamorphosis and Other Stories* (Oxford Univ. Press 2009); Tr. of Proceedings, 29:21, 42:9, Aug. 29, 2012.

physician certification of the need for inpatient services within twenty-four hours of S.T.'s admission to the Hospital, on April 27, 2009. The Hospital's medical records concerning S.T. were updated and/or amended to include recertification of the need for inpatient services on July 8, 2011. S.T. was discharged from the Hospital on July 14, 2009; therefore, S.T. was admitted to the Hospital for inpatient care services for a total of 78 days. DMAS reimbursed the Hospital $120,722.93 for the provided inpatient hospital services. Timely physician certification of S.T.'s need for admission and inpatient services existed for 60 days of the recipient's admission to inpatient hospital care, and no timely physician certification or recertification existed for 18 days of S.T.'s admission.

## C. *Patient J.M.C.*

Patient J.M.C. was admitted to inpatient hospital services on May 21, 2010. The Hospital's medical records concerning J.M.C. were updated and/or amended to include physician certification of the need for inpatient services on July 14, 2011. The Hospital's medical records concerning J.M.C. prior to July 12, 2011, do not include recertification of the need for inpatient services. The Department reimbursed the Hospital $5,524.88 for inpatient hospital services provided to J.M.C.

## II. *Standard of Review*

Virginia Code § 2.2-4027 provides, in part, that:

> The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact. The determination of such fact issue shall be made upon the whole evidentiary record provided by the agency if its proceeding was required to be conducted as provided in § 2.2-4009 or 2.2-4020 or, as to subjects exempted from those sections, pursuant to constitutional requirement or statutory provisions for opportunity for an agency record of and decision upon the evidence therein.

Further, "[w]hen the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of facts could reasonably find them to be as it did." Va. Code § 2.2-4027.

The "substantial evidence" standard is "designed to give stability and finality to the factual findings of administrative agencies." *Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality*, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005), *cert. denied*, 547 U.S. 1192 (2006). When applying the substantial evidence standard, a reviewing court is required to take into account "the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code § 2.2-4027; *Alliance to Save the Mattaponi*, 270 Va. at 442, 621 S.E.2d at 88. Further, a reviewing court may only reject an agency's factual findings when, "on considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Aegis Waste Solutions, Inc. v. Concerned Taxpayers of Brunswick Cnty.*, 261 Va. 395, 404, 544 S.E.2d 660, 665 (2001).

> Cases subject to the standard of review outlined in Code § [2.2-4027] cannot be considered a trial de novo since the factual issues on appeal are controlled solely by the agency record. The reviewing court is not free to take additional evidence, even at the request of one of the parties. Therefore, under the [Virginia Administrative Process Act], the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court. In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.

*School Bd. of Cnty. of York v. Nicely*, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991).

> The determination of an issue of fact is to be made solely on the basis of the whole evidentiary record provided by the agency and the reviewing court is limited to that agency record. A reviewing court may not, however, use its review of an agency's procedures as a pretext for substituting its judgment for the agency on factual issues decided by the agency. A reviewing court must review the facts in the light most favorable to sustaining the [agency's] action, and take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.

*Baumann v. Virginia Ret. Sys.*, 2000 Va. App. LEXIS 632, *13–14 (2000) (unpublished opinion).

> Where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion.

*Psychiatric Solutions of Va. v. Finnerty*, 54 Va. App. 173, 185, 676 S.E.2d 358, 364 (2009) (quoting *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 244, 369 S.E.2d 1, 8 (1988)).

## III. *Discussion*

The Department is the state agency responsible for the administration of Medicaid. 42 U.S.C. § 1396 requires the state to promulgate a medical assistance plan setting forth state regulations governing Virginia's Medicaid Program. DMAS is authorized to exercise administrative discretion and to issue rules, regulations, and policies pursuant to 42 C.F.R. § 431.10(e).

42 U.S.C. § 1396a(a)(44) provides:

> [I]n each case for which payment for inpatient hospital services, services in an intermediate care facility for the mentally retarded, or inpatient mental hospital services is made under the State plan,
>
> (A) A physician (or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician) certifies at the time of admission, or, if later, the time the individual applies for medical assistance under the State plan (and a physician, a physician assistant under the supervision of a physician, or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician, recertifies, where such services are furnished over a period of time, in such cases, at least as often as required under section 1903(g)(6) [42 U.S.C. § 1396b(g)(6)] (or, in the case of services that are services provided in an intermediate care facility for the mentally

retarded, every year), and accompanied by such supporting material, appropriate to the case involved, as may be provided in regulations of the Secretary), that such services are or were required to be given on an inpatient basis because the individual needs or needed such services, and

(B) Such services were furnished under a plan established and periodically reviewed and evaluated by a physician, or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician

42 C.F.R. § 456.60 provides:

(a) *Certification.*

(1) A physician must certify for each applicant or beneficiary that inpatient services in a hospital are or were needed.

(2) The certification must be made at the time of admission or, if an individual applies for assistance while in a hospital, before the Medicaid agency authorizes payment.

(b) *Recertification.*

(1) A physician, or physician assistant or nurse practitioner (as defined in § 491.2 of this chapter) acting within the scope of practice as defined by State law and under the supervision of a physician, must recertify for each applicant or beneficiary that inpatient services in a hospital are needed.

(2) Recertifications must be made at least every 60 days after certification.

When the language of a statute is unambiguous, a Court is bound by the plain meaning of the words used. The "principles of statutory construction apply with equal force 'to the interpretation of regulations adopted by an administrative agency'." *Virginia Dep't of Med. Assistance Servs. v. Patient Transp. Sys.*, 58 Va. App. 328, 334, 709 S.E.2d 188, 192 (2011) (quoting *Avalon Assisted Living Facilities v. Zager*, 39 Va. App. 484, 503, 574 S.E.2d 298, 307 (2002)). An enacting body carefully selects the words contained in a statute or regulation, and a Court will not read a legislative enactment in a manner that renders any portion of that enactment useless. Instead, a Court will apply an act of the legislature, by giving reasonable effect to every word used. Additionally, "in a dispute that involves a number of related statutes, [a Court] will read and construe them together in order to give full

meaning, force, and effect to each." *Antisdel v. Ashby*, 279 Va. 42, 48, 688 S.E.2d 163, 166 (2010).

## A. *Patients P.M.G. and S.T.*

The primary issue regarding patients P.M.G. and S.T. is whether or not recertifications were necessary every sixty days after certification under 42 C.F.R.§ 456.60. As stated by the hearing officer in the Recommended Decision, and accepted in the Final Agency Decision, "the Department interprets the federal statutory and regulatory scheme to require that the timing of certification and recertification, in the context of retroactive eligibility, be measured from the date of Program eligibility and not the date of hospital admission." Patient P.M.G. became retroactively Program eligible on March 22, 2010, and was discharged from the hospital on March 27, 2010, the same date as P.M.G.'s death. Patient S.T. became retroactively Program eligible on July 27, 2009, and was discharged from the hospital on July 14, 2009. Therefore, neither P.M.G. or S.T. were in the hospital sixty days after becoming Program eligible. A plain reading of 42 C.F.R. § 456.60(b) in conjunction with 42 U.S.C. § 1396a(a)(44) indicates that recertifications are only needed if a patient is actually in the hospital sixty days after certification or sixty days after Program eligibility in the case of retroactive eligibility. The use of the present tense "are needed" in § 456.60(b)(1) shows that recertifications after a patient is no longer in the hospital was not contemplated in the regulation, further evidenced by the use of both the present and past tense "are or were needed" in § 456.60(a) (1) regarding initial certification. To require a recertification after a patient is no longer in the hospital would be unnecessary and duplicative after a certification under subsection (a)(1) that inpatient services in a hospital "were needed" has occurred.

Therefore, the Court finds that the Department's interpretation of 42 C.F.R. § 456.60 as requiring sixty day recertifications for patients P.M.G. and S.T. is arbitrary and capricious and must be set aside. The Final Agency Decision is reversed with regard to patients P.M.G. and S.T. and remanded to the Department with instructions to process a reimbursement in accordance with the Court's findings in this opinion.

## B. *Patient J.M.C.*

The Department found that no certification occurred at the time of admission for patient J.M.C. and further found that the "late certification," which occurred a month prior to the formal hearing, was insufficient to satisfy the requirements of the statute and regulation. The Court cannot find that this interpretation was arbitrary and capricious or that there was not

substantial evidence to support this finding. Therefore, the Final Agency Decision is affirmed with regard to patient J.M.C.

## C. *Recovery of Costs and Attorney's Fees*

Virginia Code § 2.2-4030(A) provides, in part:

> In any civil case brought under Article 5 (§ 2.2-4025 et seq.) of this chapter or §§ 2.2-4002, 2.2-4006, 2.2-4011, or § 2.2-4018, in which any person contests any agency action, such person shall be entitled to recover from that agency . . . reasonable costs and attorneys' fees if such person substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust. The award of attorneys' fees shall not exceed $25,000.

A party has " 'substantially prevailed on the merits of his action' under Code § 2.2-4030(A) if he has 'obtain[ed] a judgment in his favor on a significant issue in dispute'." *Horne v. Commonwealth*, 57 Va. App. 709, 724, 705 S.E.2d 535, 542 (2011) (quoting *Hollowell v. Virginia Marine Res. Comm'n*, 56 Va. App. 70, 86, 691 S.E.2d 500, 508 (2010)). In the instant matter, the Hospital has clearly substantially prevailed on the merits of the case.

The Court must next determine if the Department's position, specifically regarding patients P.M.G. and S.T., was substantially justified. The phrase "substantially justified" has been defined as "having a reasonable basis in both fact and law." *Thornton Hall, Inc. v. Finnerty*, 62 Va. Cir. 162, 163 (Norfolk 2003) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 108 S. Ct. 2541 (1988)); *Crawford v. Sullivan*, 935 F.2d 655, 656 (4th Cir. 1991); *see also, Hollowell v. Virginia Marine Res. Comm'n*, 56 Va. App. 70, 87–91, 691 S.E.2d 500, 508–11 (2010); *Neidig v. Carter*, 55 Va. Cir. 476 (Fairfax 2000).

The Recommended Decision of the Hearing Officer in paragraph 4 of the section entitled "Additional Findings, Conclusions of Law, and Recommended Decision"[2] states:

> What is *not* reasonable and proper, nor founded in federal or state law, any Manual provision, or the Provider Participation Agreement, and is thus arbitrary and capricious, is the remedy the Department seeks for the recertification errors — reimbursement for the full amount of recipients P.M.G.'s and S.T.'s hospitalization when the Provider's only determined

---

[2] This paragraph was accepted as a conclusion of law in the Final Agency Decision.

violation occurred 60 days (S.T.) and 61 days (P.M.G.) after hospitalization and the Provider's properly documented physician certification of the need for inpatient hospital services for both S.T. and P.M.G.

This issue was not considered by this Court, as the Department conceded in their Brief in Opposition: "DMAS recognizes that a remand to the Department to determine a prorated amount to be retracted from [the Hospital] for each individual is appropriate where applicable, rather than the entire amount for the individual's hospital stay."

Further, the Court found, as discussed above, that the Department's interpretation of 42 C.F.R. § 456.60 as requiring sixty day recertifications for patients P.M.G. and S.T., who were no longer in the hospital sixty days after becoming Program eligible, is arbitrary and capricious. Therefore, the Court finds that the Department's positions regarding the issues of (1) retractions for the full amount of a patient's hospital stay and (2) the Department's interpretation of 42 C.F.R. § 456.60 are not substantially justified. The Court further finds that no special circumstances exist to make an award of attorney's fees and costs unjust.

## IV. *Conclusion*

The Final Agency Decision is reversed with regard to patients P.M.G. and S.T. and remanded to the Department with instructions to process a reimbursement in accordance with the Court's findings in this opinion. The Final Agency Decision is affirmed with regard to patient J.M.C. Pursuant to Virginia Code § 2.2-4030(A), costs are awarded to the Appellant in the amount of $84.00 and attorney's fees are awarded to the Appellant in the amount of $15,000.00, to be paid within thirty days of entry of the order.